IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JOSE L. SOLIS,

    Petitioner,

vs.

                                        CASE NO. 4:09cv312-MP/WCS

KENNETH S. TUCKER, Secretary,
Florida Department of Corrections,[1]

    Respondent.

_____/

## REPORT AND RECOMMENDATION

This is an amended petition for writ of habeas corpus filed by Jose L. Solis pursuant to 28 U.S.C. § 2254. Doc. 7. Petitioner challenges his convictions for second degree murder of Willie Joe Stanford and aggravated battery with great bodily harm

---

[1] On August 24, 2011, Kenneth S. Tucker succeeded Edwin G. Buss as the Secretary of the Florida Department of Corrections, and is automatically substituted as Respondent. Fed.R.Civ.P. 25(d).

upon Joe Shiver, case number 03-00808CFA, in the Circuit Court of the Second Judicial Circuit, in and for Gadsden County, Florida. *Id.*

Respondent filed an answer and the record in paper form. Doc. 20. References herein to exhibits are to the record in paper form. Petitioner filed a traverse. Doc. 23. Respondent concedes that the petition was timely filed. Doc. 20, pp. 19-20.

**Summary of trial evidence**

Petitioner, Jose Solis, and his brothers, Armando Solis and Mauro Solis, were charged with second degree murder and aggravated battery. Ex. D (initial brief on appeal), p. 1. A charge of false imprisonment of Yolanda Nessmith,[2] was dismissed prior to trial. *Id.* Mauro Solis was tried first, and after that trial, the court consolidated the trial of Petitioner and Armando Solis. *Id.*

On October 22, 2003, Yolanda Nessmith, Lisa Ammons, Mauro Solis, Jerry Shiver, and Willie Joe Stanford were "hanging out" at Stanford's house. *Id.*, p. 2. Mauro kicked the feet of Nessmith out from under her and she fell to the ground. *Id.*, pp. 2-3. Mauro Solis and Stanford wrestled over a shotgun and it went off. *Id.*, p. 3. Petitioner began kicking Stanford, and Mauro Solis began hitting Stanford with the shotgun. *Id.* Armando Solis was fighting Jerry Shiver. *Id.* The Solis brothers kicked and beat Stanford to death, and kicked and beat Shiver. *Id.*, p. 4.

Jose Solis and Mauro Solis were both wearing white tennis shoes. *Id.*, pp. 4-5. Dirty, bloody white tennis shoes were introduced over objection at trial. *Id.*, p. 5. A

---

[2] The trial transcript recorded her name as Nesmith, but the witness spelled her name Nessmith. Ex. B, p. 61.

DNA expert testified that Stanford's blood DNA was on the pants and shoes of Mauro Solis and that blood of both Stanford and Shiver was on Petitioner's shoes. *Id*.

**Section 2254 Standard of Review**

The court may grant federal habeas corpus relief to "a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A state prisoner must first present all federal claims in state court. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 839, 119 S.Ct. 1728, 1730, 144 L.Ed.2d 1 (1999). He "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." 526 U.S. at 845, 119 S.Ct. at 1732; Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (applying this "one complete round" requirement to the state collateral review process as well as direct appeal). If a claim is not properly presented in state court and procedurally barred from further state court review, a petitioner must demonstrate cause for the default and actual prejudice, *or* demonstrate that the constitutional violation has probably resulted in conviction of an innocent person. Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2565, 115 L.Ed.2d 640 (1991); McCleskey v. Zant, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 1470-71, 113 L.Ed.2d 517 (1991). On the other hand, a § 2254 petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." § 2254(b)(2).

For a claim which has been properly exhausted and adjudicated on the merits in state court, review is limited. The state court's determination of a factual issue is presumed correct, unless the petitioner can rebut the presumption by clear and

convincing evidence. § 2254(e)(1). If the petitioner failed to develop the factual basis for a claim in state court, an evidentiary hearing in § 2254 proceedings is limited by § 2254(e)(2). *See also* Cullen v. Pinholster, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that review under § 2254(d)(1), discussed here ahead, "is limited to the record that was before the state court that adjudicated the claim on the merits," so the federal court may not rely on new evidence developed in the § 2254 proceedings).

Further, the petitioner must show that the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d).[3]

> Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions. Under the exhaustion requirement, a habeas petitioner challenging a state conviction must first attempt to present his claim in state court. 28 U.S.C. § 2254(b). If the state court rejects the claim on procedural grounds, the claim is barred in federal court unless one of the exceptions to the doctrine of *Wainwright v. Sykes*, 433 U.S. 72, 82–84, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), applies.[4]  And if the state court denies the claim on the merits, the claim is barred in federal court unless one of the exceptions to § 2254(d) set out in § § 2254(d)(1) and (2) applies. Section 2254(d) thus complements the exhaustion requirement and the doctrine of procedural bar to ensure that

---

[3] In Cullen, the Court did not address whether a district court could choose to hold a hearing under § 2254(e)(2) to determine whether § 2254(d)(2) was satisfied. 131 S.Ct. at 1401, n. 8 and 1411, n. 20.

[4] To excuse a procedural default, as noted in Wainwright and the cases cited *supra*, a petitioner must demonstrate either cause and prejudice or actual, factual innocence.

> state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding, *see id.*, at 90, 97 S.Ct. 2497.

Harrington v. Richter, 562 U.S. ___, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011). If the state court issues an opinion, it need not cite or even be aware of controlling Supreme Court cases under § 2254(d). *Id.*, 131 S.Ct. at 784 (citation omitted). Further,

> [w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a "claim" not a component of one, has been adjudicated.

*Id.*

For an ineffectiveness of counsel claim, the "clearly established" standard is set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under Strickland, "[a] convicted defendant making a claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. In determining whether counsel gave adequate assistance, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. Petitioner has a heavy burden, as he must show that "no competent counsel would have taken the action that his counsel did take." Fugate, 261 F.3d at 1217 (citation omitted). There are no rigid requirements or absolute duty to investigate a particular line of defense, and "more is not always better." *Id.* (citations omitted).

Even if deficient performance is demonstrated, a petitioner must also show "a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. at 2068. It must be "reasonably likely" the result would have been different; "[t]he likelihood of a different result must be substantial, not just conceivable." Harrington, 131 S.Ct. at 793 (citations omitted).

While Strickland explained the performance and prejudice prongs of analysis, the court need not address them in that order or even address both, as failure to demonstrate either step of Strickland is dispositive of the claim against the petitioner. 466 U.S. at 697, 104 S.Ct. at 2069.

The Strickland standard itself is hard to satisfy, but:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. *The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Harrington, 131 S.Ct. at 788 (citations omitted, emphasis added).

**Ground one**

Petitioner contends that his trial attorney was ineffective because he did not obtain DNA testing to establish the ownership of shoes that were admitted into evidence.[5] Doc. 7, p. 4. It appears from Petitioner's response that he alleges that the

---

[5] The gist of the claim is not very clear from the petition, but becomes clear from the transcript of the Rule 3.850 evidentiary hearing. Ex. F, R. 46. Petitioner wanted his attorney to test the DNA on the shoes to see who had worn them. *Id.* The DNA of the

shoes in evidence as his shoes were Reebok brand, but he claims that his shoes were K-Swiss.  Doc. 23, p. 4.

The state court held an evidentiary hearing on this claim as presented in Petitioner's Rule 3.850 motion.  In denying the claim, the trial court determined:

> Defense counsel recognized that testing the shoes for the DNA to determine the "owner" of the shoes would not change the fact that the defendant was arrested wearing the shoes, identified for law enforcement the victims' blood on the shoes as he was being interviewed during the investigation and admitted to kicking both victims.  Testing for DNA of the "owner" of the shoes would not have aided the establishment of a defense to the charges and will not exonerate the defendant.

Ex. F, R. 41.  The court attached the transcript from the evidentiary hearing to the order. *Id.*, R. 43-88.

Petitioner testified at the Rule 3.850 hearing that he wanted his attorney to test the shoes for DNA to show "ownership" of the shoes, that is, who wore them.  Ex. F, R. 46-47.  Petitioner admitted that when he was arrested, he was wearing some shoes and he said it was *those* shoes he wanted tested for DNA.  *Id.*, R. 48.  But then Petitioner claimed that law enforcement officers had mixed up the shoes and that the shoes attributed to him could have been his brother's shoes.  *Id.*, R. 50.  Petitioner admitted he was nearby when the murder was committed.  *Id.*, R. 49.  Petitioner did not testify that his shoes were K-Swiss brand.

Ryan Davis testified that he represented Petitioner at trial.  *Id.*, R. 53-54.  He said that the shoes in question were white Reebok shoes.  *Id.*, R. 55.  He said that at trial, evidence was presented to show that Petitioner was wearing those shoes the night he

---

blood on the shoes had already been tested and was shown to be blood from the victims.

Case No. 4:09cv312-MP/WCS

was interviewed. *Id.* Blood DNA from both victims was on the outside of the shoes. *Id.* Davis said he did not have the shoes tested for DNA inside the shoes because there was never any question as to who was wearing the shoes or whether Petitioner was present when the crimes took place. *Id.*, R. 57. After arrest, Petitioner was read his *Miranda* rights and said that he got blood on his shoes because he kicked one person in the face and he "was kicking the other guy too." *Id.*, R. 59. Petitioner's attorney said that the trial strategy was not to claim that Petitioner was not present, but to show that he acted in self-defense and that the main perpetrator was Petitioner's brother, Mauro Solis. *Id.*, R. 60.

Counsel further testified that when the clothing and shoes were taken from Mauro Solis and Petitioner, they both were listed on the same chain of custody receipt. *Id.*, R. 61. There was no bag of clothes with Petitioner's name on it. *Id.* The State said that they had mislabeled the bag. *Id.* There were two bags of clothing labeled Armando Solis, and one of them should have been labeled as Petitioner's clothing and shoes. *Id.*, R. 62. Counsel for Petitioner objected to admission of the evidence, but the court overruled the objection. *Id.*, R. 61-62. In other words, the clothing and shoes of Mauro Solis and Petitioner were never mingled, but kept in two separate bags. *Id.*, R. 63.

The initial brief on appeal states that the shoes of both Petitioner and Mauro Solis were bloody and dirty, but the State did not have direct evidence that the shoes attributed to Petitioner were taken from Petitioner. Ex. D, p. 10. It was argued that those shoes could have been taken from Mauro Solis, who had been tried separately. *Id.*

At trial, Gadsden County Sheriff Investigator Matt Rowan testified that he was present when Mauro Solis and Petitioner were stopped and arrested. Ex. C (trial transcript), p. 201. He said that Petitioner was wearing short pants, a dark University of Miami shirt, and white tennis shoes. *Id.*, p. 202. He also recalled that Mauro Solis and Petitioner were both wearing white tennis that were dirty and bloody. *Id.*, p. 204. Rowan said he had instructed the deputy transporting them to remove their clothing as evidence, but he did not personally remove their clothing or bag it. *Id.*, pp. 204-205. Petitioner's attorney objected to the introduction of the clothing and shoes attributed to Petitioner since the witness had not been present when that evidence was removed from Petitioner. *Id.*, p. 205. The objection was overruled. *Id.*, pp. 206-207.

In summary, this court must defer to the state court's ruling on this claim as raised in the Rule 3.850 motion. Petitioner has not shown that DNA testing of the shoes would have shown that he had not worn them, and the trial evidence was strongly to the contrary. Petitioner has not shown that the state court's ruling has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, " or has "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(1) and (2).

**Ground two**

Petitioner contends that his trial attorney was ineffective for failing to inquire into pending criminal charges against Yolanda Nessmith, and her prior criminal record.  Doc. 7, p. 5.  In his Rule 3.850 motion, Petitioner frames the question as ineffectiveness for failing to inquire as to Nessmith's "pending criminal charge, if any."  Ex. F, R. 17.

Respondent argues that the claim raised in the Rule 3.850 "was so lacking in detail [that] it was not fairly presented," and thus state court remedies were not exhausted.  It is more efficient, however, to deny the claim on the merits.  § 2254(b)(2).  Petitioner has not alleged that Nessmith had any pending criminal charges or prior criminal history, so the claim fails on its face.

**Ground three**

Petitioner asserts that the "trial court abused its discretion in limiting the jury charge."  Doc. 7, p. 6.  He asserts that an instruction should have been given as to coming to the aid of another.  *Id*.  He asserts that this violated the Eighth Amendment. *Id*.

Respondent argues that this claim was raised on direct appeal as a state law claim, not a federal claim, and thus any federal claim is not exhausted.  This is true.  The claim on direct appeal was entirely a state law claim.  Ex. D, pp. 11-12.  But again, it is more efficient to deny the claim on the merits.  § 2254(b)(2).  A state law error as to jury instructions does not violate the federal constitution in the absence of a showing that the trial was fundamentally unfair.  Carrizales v. Wainwright, 699 F.2d 1053, 1054-1055 (11th Cir. 1987).  Petitioner has alleged nothing to show that the trial was fundamentally unfair.

**Ground four**

Petitioner contends that his attorney was ineffective for failing to object to a consolidated trial with his brother, Armando Solis. Doc. 7, p. 6. He argues that the court granted a motion to sever Petitioner's trial from that of his brother, Mauro Solis, and would have granted severance of a trial with Armando Solis had such a motion been filed. *Id.*, p. 7. Respondent concedes that state court remedies were exhausted as to this claim. Doc. 20, p. 30.

> At the Rule 3.850 evidentiary hearing, Petitioner's attorney testified:
>
> We actually discussed that [whether to move to sever] and decided that it would be better to try Jose and Armando together. And John Leace [who represented Armando Solis] and I had discussed that a little bit, and we actually went out together to the jail and discussed that with Jose and Armando together, all four of us together.
>
> \*              \*              \*
>
> All four of us discussed that together and decided that would be the best course of action, to keep Jose and Armando together, and to let Mauro have his own trial. And then, basically, the defense for Jose and Armando was, it was Mauro who was doing most of this and we only got out after the gun went off and got involved then.

Ex. F, R. 73-74. Counsel pointed out that Mauro Solis was sentenced to life in prison, while Armando Solis was sentenced to 15 years in prison, and was found guilty of the lesser included offense of manslaughter. *Id.*, R. 74. Petitioner was found guilty as charged and sentenced to 30 years in prison. When asked if he had anything to present on the claim concerning failure to move to sever the cases, Petitioner said he did not. *Id.*, R. 75. He did not dispute that his attorney had talked this decision over with him, Armando Solis, and counsel for Armando Solis, and agreed to try the cases together as a matter of trial strategy. *Id.*

Case No. 4:09cv312-MP/WCS

The trial court denied this claim, finding that Petitioner had not show ineffective assistance of counsel as defined by <u>Strickland</u>. This was not unreasonable. It is undisputed that Petitioner's trial attorney decided to go to trial with Armando Solis, that the decision was fully discussed with both defendants and their lawyers, and it was a strategic decision, to cast more blame on Mauro Solis. Ground four provides no relief.

**Certificate of Appealability**

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2254 Rule 11(b).

I find no substantial showing of the denial of a constitutional right. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, I recommend that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this report and recommendation.

**Conclusion**

Accordingly, it is **RECOMMENDED** that petition for writ of habeas corpus filed by Jose L. Solis pursuant to 28 U.S.C. § 2254 challenging his convictions for second degree murder of Willie Joe Stanford and aggravated battery with great bodily harm upon Joe Shiver, case number 03-00808CFA, in the Circuit Court of the Second Judicial Circuit, in and for Gadsden County, Florida, be **DENIED WITH PREJUDICE** and that a certificate of appealability be **DENIED** pursuant to § 2254 Rule 11(a).

**IN CHAMBERS** at Tallahassee, Florida, on November 21, 2011.

    s/    William C. Sherrill, Jr.
    **WILLIAM C. SHERRILL, JR.**
    **UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**